# Commonwealth *ex rel.* O'Connor *versus* McCuen et al., Commissioners of Philadelphia.

1. O'Connor indicted Tack and others for conspiracy, and also commenced civil proceedings against them; pending the indictment the parties referred all matters in dispute; when the indictment came on for trial the bill was submitted without evidence and by consent of prosecutor and District Attorney with the approbation of the court there was a verdict of "Not

[Commonwealth *v.* McCuen.]

Guilty, county to pay the costs." *Held*, the county (city) was not liable for the costs, the prosecution being for private purposes.

2. The Act of March 31st 1860, authorizing costs to be put upon a county, makes them liable only as a result of a trial.

3. The purpose of the act was to put the costs on the party behaving worst or divide them according to their demerits.

4. When nothing has been submitted to a jury there has been no trial within the act.

5. To charge costs on the county there must be a determination of the jury in the very case.

February 4th 1874.   Before AGNEW, C. J., MERCUR and GORDON, JJ.   SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Philadelphia*: No. 97, to January Term 1873.   The history of the case was:—

On the 28th of September 1872, James O'Connor presented a petition to the Court of Common Pleas for a mandamus to Alexander McCuen, Thomas M. Locke and James Bain, commanding them to pay the petitioner certain costs, alleged to have been incurred on the trial of an indictment against A. H. Tack and others.

The indictment charged A. H. Tack *et al.* with a conspiracy in being oil brokers and dealers in oil and conspiring to defraud the prosecutor, their principal and the public, by illegal and fraudulent combinations and representations, to inflate excessively by cornering the oil market.   April 14th 1868, the jury were called, and after a long and bitterly contested trial, of great notoriety in the oil trade, and with the public at large, the jury being unable to agree, were, April 23d 1868, discharged.   Although the prosecution did not result in a conviction, it produced all the public benefit in breaking an attempted corner in that market on a gigantic scale, involving foreign as well as the home markets, in progress when the prosecution began, and also in so changing and settling the character of that trade that no combinations for corners were afterwards attempted in it, although it is in its nature peculiarly open to them, and had at the time of the prosecution, begun to be injured by them.

Before the second trial, the parties in the case referred all the civil issues between them, arising out of the same transactions, for which a bill in equity and action on the case were pending, to the final arbitration of Judge Strong, and at the second trial the jury, with the consent of the prosecutor and of the district attorney, with the approval of the judge presiding at the trial, who presided at the former trial, on submission of the bill, rendered a verdict of not guilty, *the county to pay the costs.*

The petitioner set out that at his prosecution an indictment was found at the March Term 1868, of the Court of Quarter Sessions at Philadelphia, against Augustus H. Tack and others for conspiracy; that upon the trial, April 23d 1865, the jury having

[Commonwealth *v.* McCuen.]

informed the court that they could not agree, were discharged; that on the 26th of January 1869, another jury was impannelled, and with the consent of the petitioner, as prosecutor, and the district attorney and with the approval of the judge presiding at the trial, upon submission of the indictment, the jury returned a verdict of "not guilty, county to pay the costs."

That the Act of Assembly of March 31st 1860, sect. 62, 64, provides, "in all cases of acquittals, by the petit jury, on indictments for the offences aforesaid (except felonies), the jury trying the same shall determine by their verdict, whether the county, or the prosecutor, or the defendant, shall pay the costs, or whether the same shall be apportioned between the prosecutor and the defendant, and in what proportions," "and the costs of prosecution accruing on bills of indictment charging the party with felony, shall, if said party be acquitted by the petit jury on the traverse of the same, be paid by the county."

That the Act of Assembly of May 3d 1856, sect. 5, relating to the duties of the city commissioners of the city of Philadelphia, provides, "that the city commissioners shall draw no warrants upon the city treasury for the payment of the fees of jurors, viewers, witnesses or officers of the courts, without a certificate of the prothonotary or clerk of the court, countersigned by one of the judges of the court in which the duty or service was performed, that the same is correct to the best of his belief, nor shall any warrant be drawn for jury or witness fees, in favor of any person but the juror or witness entitled to such fees."

That on notice to the District Attorney and his examination of the petitioner's bill of costs in the prosecution, the petitioner caused the bill to be taxed by the clerk of the court on the 14th of October 1869, and the taxation was not appealed from; that the court ordered the clerk to certify this taxed bill to the city commissioners, Alexander McCuen, Thomas Locke, and James Bain, and the president judge of the court countersigned the certificate, which is as follows:—

"I hereby certify, that the foregoing is a true copy of the docket entries in the case there stated, as the same now remains of record in the office of the Court of Quarter Sessions, &c., for the city and county of Philadelphia, and that the foregoing taxed bill of costs for witness fees, due to the witnesses therein named, is correct, to the best of my belief, and that this certificate is made to the city commissioners of the city of Philadelphia, that they may, by refusal to draw warrants therefor, and upon a mandamus, upon the petition of said witnesses, or one of them, to compel the drawing of said warrants, determine the question whether under the law the jury in said cause were warranted in determining that the county should pay the costs of the prosecution.

[Commonwealth *v.* McCuen.]

" Witness my hand and the seal of said court, this 18th day of March, A. D. 1872.

"J. P. GALTON, Pro. Clerk.

(Countersigned,)          "JOSEPH ALLISON."

That the taxed bill of costs included a bill of costs of the petitioner for daily pay, &c., on behalf of the prosecution, amounting to $208.88, which is unpaid, but that the commissioners had refused to issue their warrant on the treasurer for its payment.

The prayer was for a mandamus to the commissioners commanding them to draw their warrant on the treasurer for the payment of the petitioner's bill.

The commissioners answered that the indictment had been submitted to the petit jury by the District Attorney without offering any evidence, and "there was in fact no trial of the indictment; that the prosecution was abandoned by the District Attorney, with the consent of the petitioner as prosecutor, by an agreement between him and the defendants, by which agreement all civil questions in dispute between them were referred to an arbitrator ; that the prosecutor, having filed his bill of costs, amounting to $2729.68, had the bill taxed, and applied to the Court of Quarter Sessions for an execution against the city, but the court refused to enter judgment on the verdict and allow an execution to issue, which decree was removed to the Supreme Court and a judgment of *non pros* there entered, March 17th 1871. For these reasons, and upon the certificate to the bill of costs, the commissioners had refused to pay the bill of costs."

A rule was granted to show cause why an alternative mandamus should not be issued, which was discharged October 12th 1872.

The relator removed the record to the Supreme Court, and assigned for error the order discharging his rule.

*G. L. Crawford,* for plaintiff in error.

*R. N. Willson,* for defendants in error.

The opinion of the court was delivered, February 9th 1874, by AGNEW, C. J.—This is not a proceeding in the Court of Quarter Sessions. It is a petition to the Court of Common Pleas for a writ of mandamus to compel the city commissioners to draw their warrant on the city treasurer for payment of a bill of costs incurred in the Quarter Sessions. The facts are set forth in the petition and answer and also in the history of the case, and are therefore regularly before us as the ground on which the mandamus is asked for. James O'Connor, the relator, prosecuted an indictment in the Quarter Sessions against the Tacks and others for a conspiracy in relation to large oil transactions carried on

[Commonwealth v. McCuen.]

between them.　After a trial and disagreement, and discharge of one jury, the prosecutor and defendants came to an arrangement to settle their matters by a reference, and when the indictment came up again, by agreement, the prosecution being abandoned, a verdict was rendered without evidence or trial, of not guilty, and that the county pay the costs.　The bill of costs as taxed exceeded two thousand seven hundred dollars, of which the prosecutor claimed two hundred and eight dollars and eighty-eight cents.　He, as relator, now seeks this mandamus to compel payment of his own bill.　It is clearly proved that the criminal proceeding was used by the prosecutor to accomplish a private purpose, rather than to serve the ends of justice.　The reference and the mode of disposing of the indictment make this plain.　Why should the city be saddled with the costs of such an attempt?　Clearly it should not be, unless it has been legally so fixed with their payment as to be beyond escape.　The county or city is never in court to defend herself, and is no party to such a proceeding, and it is the duty of the court to see that she is not charged by mere arrangement of private parties.　The purpose of the law was plainly to make the jury to stand as a shield against improper charges, and that the county should be charged only as a result of a *trial*.　The Act of March 31st 1860, provides that "in all cases of acquittals by the petit jury on indictments for the offences aforesaid (viz.: misdemeanors), the jury trying the same shall determine by their verdict whether the county or the prosecutor or the defendant shall pay the costs, or whether the same shall be apportioned between the prosecutor and the defendant, and in what proportion."　In misdemeanors the parties to an indictment are determined by the law.　The 27th section of the Act of 31st March 1860, enacts that no person shall be required to answer to any indictment unless the prosecutor's name, if any there be, is endorsed thereon; and when none is avowed, enables the court to hear witnesses and determine whether there is a prosecutor, and if they find there is, to direct his name to be endorsed on the indictment: 1 Bright. Dig. 381, pl. 28.　It has been held also that when the jury find costs against the prosecutor, they must name him in their verdict. It was the evident purpose of the law to place the costs upon the party that has behaved the worst, or to divide them between them in proportion to their demerits.　It is not just that the public should pay the expense of a litigation growing out of malice or revenge, or where the behavior of the defendant is deserving of punishment, though he may through defects of form or of evidence, escape conviction of a technical offence: Baldwin *v.* Commonwealth, 2 Casey 172.　Hence the act says, the jury *trying* the same shall *determine* by their verdict who shall pay the costs. But how can it be said the jury has tried and determined anything, when nothing has been submitted to them?　On what principle

[Cunningham *v.* McCuen.]

of propriety or of justice shall it be in the power of the parties to hush up a prosecution and agree to throw the costs on the city or county ? Such a verdict is not a trial, and really determines nothing against an absent party. To grant a mandamus in such a case, upon the admitted facts, would make the court a party to a mere shift, by which the parties would unload themselves of all responsibility.

This case is, by its admissions and the nature of the application, much stronger than that of The Commonwealth *v.* Horner, 10 Casey 440, where this court, looking into the facts adduced by the prosecutor himself, refused to reverse the order of the Quarter Sessions setting aside the taxation of the prosecutor's bill of costs. There were two bills of indictment, one for larceny and the other for conspiracy, and a settlement having taken place, the prosecutor filed his bill of costs in the conspiracy case, while in point of fact the costs were incurred in the felony case. On the testimony taken in the court below, relied on by the prosecutor, upon his writ of error, this court refused in that case to reverse the action of the Quarter Sessions. The determination of the jury in the *very* case, is the only protection the city or county has against fictitious claims. To suffer the costs to be imposed otherwise, would encourage litigation where the arm of the law, in its criminal branch, is used for improper purposes. Fortunately, we are not bound to do this wrong. The mandamus is a great prerogative writ, of extraordinary character, which may not be invoked unless the relator is clearly entitled to it, and has no other legal remedy : Commonwealth *v.* Canal Commissioners, 2 Penna. R. 517 ; Hester's Case, 2 W. & S. 416 ; Heffner *v.* Commonwealth, 4 Casey 108 ; 1 Jones 196. We think that the relator has not shown such a case here, as to require us to reverse the refusal of the court below to award the writ.

The judgment is therefore affirmed.